*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

WANDA FAZZOLARI,     :
            :
      Plaintiff,  :   Civil Action No. 17-7096(FLW)
            :
    v.       :
            :     **OPINION**
            :
NANCY A. BERRYHILL,    :
Acting Commissioner of Social Security, :
            :
      Defendant. :
_____:

**WOLFSON, United States District Judge**:

   Wanda Fazzolari ("Plaintiff"), appeals from the final decision of the Acting

Commissioner of Social Security, Nancy A. Berryhill ("Defendant"), denying Plaintiff disability

benefits under Titles II and XVI of the Social Security Act (the "Act").  After reviewing the

Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion

was based on substantial evidence and, accordingly, affirms the decision.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   On August 10, 2013, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits, alleging disability beginning on December 1, 2012.

Administrative Record ("AR"), 14.  Plaintiff's claim was denied initially on September 27,

2013, and upon reconsideration on March 28, 2014. *Id.* Thereafter, Plaintiff filed a written

request for hearing on April 4, 2014. On December 4, 2015, a hearing was held before the

ALJ. *Id.* On February 8, 2016, the ALJ issued a written decision affirming the denial of

Plaintiff's benefits. *See Id.* at 20. Plaintiff requested a review by the Appeals Council, which was denied on July 11, 2017. AR. 156.

### A. Medical Evidence Before the ALJ

On November 20, 2012, weeks prior to the alleged onset disability date, Plaintiff complained to Dr. Rakesh Passi of shortness of breath that had persisted for several weeks. AR 293. She also reported experiencing shooting leg pain, worse on the right side, that occurred mostly at night. AR. 293. Upon examination, Dr. Passi noted that Plaintiff was 5'4" and 205 pounds. In his report, the doctor indicated that Plaintiff's head was normocephalic, and while she exhibited an early systolic murmur, her first and second heart sounds were of normal intensity with no abnormal heart sound, peripheral pulsations were normal, and she exhibited no evidence of edema. AR. 294. Plaintiff also exhibited no focal deficit, as she was alert, conscious and oriented. Dr. Passi diagnosed Plaintiff with morbid obesity, benign hypertension, mixed hyperlipidemia, sciatica, angina pectoris, mitral valve disorder, nonrheumatic tricuspid valve disorder, cardiovascular system symptoms NEC, and chest pain, not otherwise specified. AR. 294. The doctor recommended that Plaintiff engage in aerobic exercise and stress reduction. AR. 295.

On December 5, 2012, four days after the alleged onset date, Dr. Passi performed a myocardial exercise stress test perfusion study, and the result was normal. AR. 289. An EKG stress test was negative for ischemia. AR. 289. The test confirmed that overall left ventricular systolic function was normal, with a left ventricular ejection fraction of 65%. There was no evidence of regional wall abnormalities. AR. 289.

The following month, Plaintiff complained to Dr. Passi of bilateral leg pain, with leg weakness that she described as feeling like jelly. AR. 287. The doctor conducted a reflex examination which revealed 1/4 ankle jerk on the right side and 4/4 on the left side. AR. 288.

Further, the doctor opined that Plaintiff's head remained normocephalic, and that she continued to exhibit an early systolic murmur, but her heart sounds were of normal intensity, peripheral pulsations were normal, and she did not present any symptoms of edema. AR. 288. On January 30, 2013, an MRI of Plaintiff's lumbar spine showed a small disc protrusion at T12-L1, with mild degenerative changes in her lower thoracic and lumbar spine, and minimal to mild disc bulges from L2-3 through L5-S1. AR. 286. On March 1, 2013, Plaintiff saw Dr. Passi, again, seeking disability license plates for her car. AR. 284. She reported a cough and chest pain with body aches. Dr. Passi's diagnosis of Plaintiff did not change from previous visits. AR. 285. Indeed, the doctor stated that while Plaintiff had an early systolic murmur, her heart sounds were normal and no evidence of edema. AR. 285.

In September 2013, Plaintiff returned to Dr. Passi claiming that her symptoms had gotten worse, particularly her back pain, which radiated down her legs. AR. 281. Dr. Passi performed certain testing, which found that Plaintiff reported severe back pain when raising her leg to 15 degrees on the right side, and 30 degrees on the left. AR. 282. Like her previous diagnosis, Dr. Passi found that Plaintiff's peripheral pulsations were normal, and that she exhibited no evidence of edema or focal deficit. AR. 282. An x-ray of Plaintiff's lumbosacral spine revealed minimal discogenic and hypertrophic changes. A chest x-ray revealed no active disease.

Shortly after, on September 25, 2013, Dr. Celia Roque examined Plaintiff's lower back. Reportedly, Plaintiff complained of back pain with lightheadedness, headaches, nausea, and ringing in her ears. The combination of these symptoms led Dr. Roque to diagnose Plaintiff with vertigo. AR. 217-18. Dr. Roque noted that Plaintiff had difficulty getting up from a supine position, which accentuated her lower back pain. Dr. Roque also examined lumbosacral and paravertebral tenderness. The doctor found Plaintiff's range of motion adequate and normal,

apart from certain lumbar and right knee limitations. AR. 219. Plaintiff was not in acute distress and could get on and off the examination table without assistance. AR. 218. Plaintiff's gait was normal, and she did not use an assistive device for ambulation. Dr. Roque noted the following regarding Plaintiff's condition: 1) she did not exhibit any focal deficits; 2) her sensory response was full in her left leg; 3) Plaintiff had no swelling, skin discoloration, or erythema; and 4) her muscle strength was full (5/5) throughout. AR. 219. Dr. Roque diagnosed Plaintiff with chronic low back pain, secondary to discogenic/degenerative changes in the lumbosacral spine and spondylitic changes in the lower thoracic spine with lumbar radiculopathy to the right lower extremity; hypertensive vascular disease; stage 2 obesity; and a history of obstructive sleep apnea. AR. 219. All in all, Dr. Roque concluded that Plaintiff was limited in activities that required prolonged standing, walking or sitting, but significantly, Plaintiff's limitations did not prevent her from performing activities of daily living. AR. 219-220. It was Dr. Roque's opinion that Plaintiff could sit, with some limitations for prolonged standing and walking. Indeed, Plaintiff was capable of carrying, handling objects, hearing, speaking, reading, writing, and traveling. AR. 220.

On March 14, 2014, Plaintiff saw Dr. Passi; she complained to the doctor that she could not lose weight, and that she continued to have leg and back pain. Again, Dr. Passi found that Plaintiff's head was normocephalic, that she had an early systolic murmur, but her peripheral pulsations were normal; Plaintiff had no sign of edema or focal deficit. AR. 279. Dr. Passi also ordered a nuclear test, which showed a LVEF of 67% and was negative for ischemia. AR. 267. Plaintiff's echocardiogram was within normal limits. Similarly, in May and April of 2014, Dr. Passi's examinations repeated the same findings. AR. 267, 263.

In October 2014, Dr. Passi noted that Plaintiff still had difficulty losing weight. Plaintiff continued to complain of severe back pain, memory loss, with vertigo symptoms. Plaintiff also stated that she noticed blood in her stool. AR. 260. The doctor recommended a colonoscopy and regarding her symptoms, it was recommended that Plaintiff receive physical therapy. AR. 261. Plaintiff commenced physical therapy several weeks later. AR. 227. The therapist assessed Plaintiff's range of motion and found it within normal limits. In that regard, the therapist concluded that Plaintiff's rehabilitative potential was fair. AR. 227, 230. Plaintiff was ultimately discharged in February 2015, due to non-compliance. AR. 225.

In January 2015, Dr. Sebastian Palmeri found Plaintiff stable and in no distress. AR. 255. Dr. Palmeri examined Plaintiff after she complained of chest discomfort. The doctor noted that the discomfort was noncardiac in etiology as Plaintiff exhibited a regular cardiac rhythm, with no significant murmur, gallops, click or rubs, and she had no pedal edema, cyanosis, clubbing, redness, or tenderness. AR. 255.

In March 2015, Plaintiff returned to Dr. Passi. Like past results, Dr. Passi indicated that while Plaintiff had an early systolic murmur of the 1/6 grade, her peripheral pulsations were normal, and she exhibited no evidence of edema or focal deficit. AR. 252. After providing Plaintiff the appropriate medications, the doctor noted that an exacerbation of coronary artery disease or peripheral vascular disease should be "ruled-out." AR. 253. A transthoracic echocardiogram showed trace mitral regurgitation, mild tricuspid regurgitation, and trace pulmonic valvular regurgitation, with a mildly dilated right ventricle, trace pericardial effusion, and mild left ventricular hypertrophy. Plaintiff's left ventricle systolic function was normal with an ejection fraction of 60% to 65%. AR. 250. A trace of plaque, with mild plaque in the right, was detected in the cerebrovascular evaluation; however, despite the plaque, all ventricles and

vertebral flow were normal. AR. 248. Myocardial perfusion imaging indicated that Plaintiff's left ventricle perfusion and systolic function were normal. AR. 247. Dr. Passi recommended Plaintiff to continue her medications.

In June 2015, Dr. Kyle Stier reported tenderness in Plaintiff's right cervical paraspinal, trapezius, periscapular musculature, and bilateral lateral paraspinals, with minor left-side tenderness in her cervical and thoracic spine. AR. 234. It was also reported that Plaintiff had a mildly decreased range of motion in her cervical spine, with right-side pain on left bending, but good range of motion in her lumbar spine in side bending, rotation, and extension. Plaintiff strength was full (5/5), her reflexes were symmetric, and her sensation was intact. AR. 234. Dr. diagnosed Plaintiff with diffuse myofascial pain rather than orthopedic related. AR. 234.

Months later, Plaintiff returned to Dr. Passsi, complaining of left-shoulder and upper back pain. Plaintiff also complained of a headache, which she attempted to mitigate by taking aspirin. AR. 240. Once again, Dr. Passi indicated that while Plaintiff had an early systolic murmur of the 1/6 grade, her peripheral pulsations were normal, and there was evidence of edema or focal deficit. AR. 241. Based on the symptoms presented, Dr. Passi recommended exercise and physical therapy. AR. 242. The doctor also opined that Plaintiff's neck and shoulder pain was due to a pinched nerve. AR. 242.[1]

---

[1]     On this appeal, Plaintiff also presented additional medical evidence that was not considered by the ALJ. In November 2015, Plaintiff saw Dr. Patrick Gainey because she complained of a new type of right occipital headache, which had persisted for two weeks. AR. 28. In addition, Plaintiff reported that she had memory issues. AR. 29. After an examination, Dr. Gainey found Plaintiff's gait normal, with a steady station and sensation that was intact to light touch. AR. 29. Dr. Gainey suspected that Plaintiff was becoming perimenopausal. AR. 29. A follow-up MRI showed nonspecific white matter changes AR. 32. On January 4, 2016, Plaintiff also reported a loss of focus and word-finding difficulties, and Dr. Gainey put Plaintiff on nortriptyline.

## B.  State Agency Medical Opinions

In September 2013, state-agency physician, Jyosthsna Shastry, M.D., reviewed Plaintiff's medical records and concluded that Plaintiff retained the residual functional capacity ("RFC") to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk, and sit for 6 hours a day; and occasionally climb, stoop, kneel, crouch, and crawl.  AR. 75-76.

Thereafter, in March 2014, another state-agency physician, Dr. Melvin Golish, reviewed Plaintiff's medical records and opined that Plaintiff retained the RFC to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk and sit for 6 hours a day.  Similarly, Dr. Golish found that Plaintiff could climb, stoop, kneel, crouch and crawl.  AR. 84-85.

## C.  Administrative Hearing

At the administrative hearing, Plaintiff testified that she was 52 years old and that she had graduated high school.  From December 1997 to December 2012, Plaintiff worked as a research assistant for payroll services, which was performed in a seated position, using a computer. Plaintiff testified that she sometimes had to lift boxes of paper weighing over ten pounds, and she also was required to lift binders on a daily basis weighing more than ten pounds.  AR. 43-44.

Regarding her disabilities, Plaintiff stated that she has high blood pressure and severe back pain.  Plaintiff claims that because she has vertigo, she suffers from headaches, with dizzy spells and nausea.  AR. 46.  Plaintiff further testified that she cannot sit for more than 20 to 30 minutes before the pain becomes worse in her back, legs and hip areas.  AR. 48.  Plaintiff stated that she is able to stand for about a half hour and is able to walk for approximately ten minutes, and that she can lift and carry five or ten pounds.  AR. 49.  According to Plaintiff, she also has debilitating high blood pressure that causes her chest to feel tight, and that she would have a hard time breathing.  AR. 52.  Plaintiff, however, stated that she has been taking blood pressure

medicine. AR. 52. Plaintiff also testified that she has sleep apnea and that she uses a mouth piece at night. AR. 54.

With regard to her daily life activities, Plaintiff testified that she prepares her nine year old daughter for school. AR. 55. She also prepares dinner when she can. But, Plaintiff claimed that she lies down during the day in order to elevate her legs. AR. 56. Plaintiff also sweeps the floor of her home and prepares light meals. Plaintiff claims, however, on a bad day, she cannot do any chores. AR. 58. Finally, Plaintiff testified that she was laid off of work and that she is too sick to be employed. Due to her dizziness and pain, Plaintiff stated that she was late many times to her former job and missed time when she got to work. AR. 61-62.

Additionally, at the hearing, the ALJ asked the vocational expert to consider a hypothetical individual fitting Plaintiff's vocational profile, who could perform light work; could occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds; and could not work around unprotected heights or moving mechanical parts. AR. 66. The vocational expert testified that such an individual could perform Plaintiff's past relevant work as an administrative clerk and research assistant. AR. 66.

### D. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ noted that Plaintiff had not preformed substantial gainful activity since her alleged onset date of December 1, 2012. AR. 12. At step two, the ALJ opined that Plaintiff's degenerative disc disease, hypertension, and obesity constituted severe impairments; however, those impairments did not meet or medically equal the requirements of any listed impairments at step three. AR. 12. The ALJ reasoned that while Plaintiff has vertigo, there is no evidence to show that this impairment has had the requisite limiting effects on Plaintiff's ability to perform basic work activities. Indeed, the ALJ noted that

Plaintiff's examination from Kessler in 2015 reported that she has had vertigo over four years, but she did not seek treatment until recently. The ALJ, thus, found that the impairment of vertigo is not severe. AR. 12. Regarding Plaintiff's obesity, the ALJ noted that although there is no specific medical listing based on obesity, the ALJ considered Plaintiff's obesity in combination with other impairments to determine the severity or functional limitations of those impairments. AR. 13.

Prior to considering step four, the ALJ found that Plaintiff retained the RFC to perform a range of light work consistent with her hypothetical question to the vocational expert. AR. 13. At step four, the ALJ determined that Plaintiff could perform her past relevant work as actually and generally performed in the national economy. AR. 15. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. AR. 15-16.

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less

than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is

presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §
404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the
claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482
U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past
relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no
longer able to perform his or her previous work, the burden of production then shifts to the
Commissioner to show, at step five, that the "claimant is able to perform work available in the
national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step
requires the ALJ to consider the claimant's residual functional capacity, age, education, and past
work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all
the claimant's impairments in determining whether the claimant is capable of performing work
and not disabled. *Id.*

## III.  ANALYSIS

Plaintiff challenges several aspects of the ALJ's decision, and generally asserts that the
ALJ incorrectly applied the law and failed to rely on substantial evidence to find that Plaintiff did
not meet the Act's definition of disability. Specifically, Plaintiff argues that the ALJ 1) erred in
her designation of Plaintiff's severe impairments; 2) erred in her analysis of the Listings; 3) erred
in her weighing of the medical evidence vis-à-vis her impairments; 4) erred in her assessment of
Plaintiff's credibility; and 5) erred in her finding that Plaintiff could perform her past relevant
work as an administrative clerk and research assistant.

### A.  Post-Hearing Medical Evidence

As a preliminary matter, I will discuss Plaintiff's contention that the ALJ failed to
consider certain medical evidence. On this appeal, Plaintiff submitted a medical report from Dr.
Gainey.   The report documented that Plaintiff complained of a right occipital headache, which

had persisted for two weeks.  AR. 28.  In addition, Plaintiff complained that she had memory issues.  AR. 29.  After an examination, Dr. Gainey found Plaintiff's gait normal, with a steady station and sensation that was intact to light touch.  AR. 29.  Dr. Gainey suspected that Plaintiff was becoming perimenopausal.  AR. 29.  Importantly, Plaintiff claims that because an MRI showed nonspecific white matter changes, AR. 32, this new development was worthy of consideration as it relates to her vertigo and/or memory loss issues.

According to Plaintiff, she submitted this evidence on January 29, 2016, which was weeks after the administrative hearing concluded on December 4, 2015.  While the ALJ's decision was not rendered until February 8, 2016, I do not find that the ALJ erred by refusing to consider this additional evidence.  At the conclusion of the hearing, the ALJ anticipated that Plaintiff's attorney would submit additional medical evidence, since counsel requested two weeks to file new documentation.  AR. 70.  The ALJ agreed to keep the record open for two additional weeks, until December 18, 2015.  AR. 70.  However, on December 21, 2015, three days after the record closed, the ALJ sent a letter to Plaintiff's counsel inquiring about the additional evidence.  AR. 212.  Indeed, the ALJ provided counsel until December 31, 2015 to submit any new medical reports.  AR. 212.  Two days later, counsel sent a letter to the ALJ requesting an additional two weeks since he had experienced delay in obtaining Dr. Gainey's records.  AR. 213.  The ALJ granted the request, and ordered counsel to supplement the record by January 14, 2016.  Importantly, the ALJ advised that no additional extension would be entertained without good cause.  AR. 214.  Counsel did not submit the evidence until January 29, 2016, weeks after the deadline to do so.  And, counsel did not seek any additional time, let alone show good cause for the delay.

I find that the ALJ did not err by refusing to consider the belated medical evidence, due to counsel's own dilatory conduct. The law is clear: once the record is closed and counsel fails to submit evidence in a timely manner, an ALJ has no obligation to consider such evidence.[2] *See Betz v. Colvin*, No. 12-2152, 2014 U.S. Dist. LEXIS 108034, at *16-17 (M.D. Pa. Aug. 6, 2014); *Taylor v. Colvin*, No. 12-4130, 2013 U.S. Dist. LEXIS 169438, at *3 (D. Kan. Dec. 2, 2013) ("The court finds no error in [] the ALJ's failure . . . to expressly consider Dr. Bradshaw's post-hearing opinion. With respect to the ALJ's failure to consider the opinion, plaintiff has not shown the court that the opinion was ever made part of the record before the ALJ"); *Ostigny v. Comm'r of Soc. Sec.*, No. 12-477, 2013 U.S. Dist. LEXIS 123844, at *3 (S.D. Ohio Aug. 29, 2013) (Although a medical report was submitted prior to the ALJ's decision, because the "report was not submitted until over ten days after the expiration of the deadline for submitting post-hearing evidence, the ALJ did not err by failing to address the report"); *Franson v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 716, 723 (W.D. Mich. 2008) (holding that, where the plaintiff's attorney sent medical records to the ALJ after the record closed, but before the opinion was filed, "[a]ny fault relating to the ALJ's purported 'failure to consider' plaintiff's post-hearing exhibits rests squarely on plaintiff's attorney's shoulders," and "the ALJ was under no obligation to consider the 'evidence'" submitted post-closing); *Rivera v. Astrue*, No. 07-1912, 2008 U.S. Dist. LEXIS 60422, at *47 (D.N.J. Aug. 8, 2008)(finding no good cause where "Claimant did not submit the records . . . in a timely fashion under the Commissioner's regulations, and did not seek permission from the ALJ for a late submission"); *see also Matthew v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001).

---

[2] Even if I were to consider Dr. Gainey's report, it would not change my conclusion that the ALJ did not err in finding that Plaintiff is not disabled under the Act. *See*, *infra*,

**B.**     **Severe Impairments**

At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Plaintiff had severe impairments including degenerative disc disease, hypertension, and obesity. Significantly, the ALJ considered the pertinent medical evidence and found that Plaintiff's vertigo was non-severe. Plaintiff takes issue with this finding. Plaintiff argues that Plaintiff's vertigo should in fact have been found to be a severe impairment. Additionally, Plaintiff argues that the ALJ overlooked Plaintiff's headaches, cardiac condition, mental status (including word finding, lack of focus, memory loss), sleep apnea, and urinary incontinence, in the determination of her severe impairments. I disagree.

First, the ALJ had substantial evidence to support her finding that Plaintiff's vertigo was a non-severe impairment. Indeed, despite being diagnosed as having vertigo, Plaintiff was never given medication for such a condition. And, none of the medical evidence even suggested that Plaintiff's daily activities were severely limited by her vertigo. As the ALJ correctly noted, Plaintiff's EKG stress test yielded normal result throughout, and there was no evidence to support a finding that Plaintiff's vertigo resulted in debilitating symptoms. In fact, while Plaintiff sometimes had issues with dizziness, presumably because of vertigo, the ALJ found that Plaintiff was given physical therapy by Kessler to lessen those effects, and that she was ultimately discharged from Kessler due to her non-compliance. Taking those circumstances together, it was entirely appropriate for the ALJ to find that Plaintiff' vertigo was non-severe.[3]

---

[3] Plaintiff also argues that the ALJ failed to consider Dr. Gainey's report in her determination that vertigo was a non-severe impairment. I already have decided that the ALJ did not err by refusing to consider Plaintiff's untimely submission in that regard. But, even if I were to

Next, the ALJ also did not err when she declined to consider Plaintiff's headaches, cardiac condition, unspecified mental impairments, sleep apnea and urinary incontinence as severe impairments. I agree with the ALJ's findings in this context for one simple reason — Plaintiff has not presented any medical evidence to support her position that any of these conditions imposed ongoing affirmative limitations. Rather, based on the objective medical evidence, no treating or examining physician opined as to any specific limitations stemming from Plaintiff's headaches, cardiac condition, mental impairments, sleep apnea or urinary incontinence. For example, while Plaintiff cites a report of nocturnal or urge incontinence from 2013, she denied urinary frequency or burning to Dr. Palmeri in early 2015. AR. 255. Tellingly, Plaintiff did not list incontinence among the impairments affecting her ability to work. AR. 54. Additionally, no care provider imposed any limitations related to Plaintiff's sleep apnea.

With regard to Plaintiff's purported mental impairments, it is noteworthy that Plaintiff initially excluded issues with memory, task completion or concentration, during the relevant period, in the Social Security Disability Functional Report submitted in connection with her benefits claim. AR. 175. Moreover, the only medical report before the ALJ that discusses Plaintiff's mental state is Dr. Roque's opinion that Plaintiff's mental status was clear. AR. 218. In fact, no other doctor diagnosed Plaintiff with any mental impairments. Even Dr. Gainey, whose report the ALJ did not consider, attributed Plaintiff's decreased focus and concentration to her perimenopausal condition. AR. 27. Simply, there is no record evidence demonstrating

---

consider such a report, Dr. Gainey did not indicate, medically, that Plaintiff's vertigo symptoms were debilitating. Rather, Dr. Gainey attributed Plaintiff's reportedly decreased focus and attention to her perimenopausal condition. AR. 27. I note that while Plaintiff insists that the MRI revealed certain white matter changes in her brain, those changes were nonspecific, and Dr. Gainey did not make any additional diagnoses in light of the MRI. Accordingly, even considering Dr. Gainey's report, I cannot find that the ALJ erred in finding that Plaintiff's vertigo was a non-severe impairment.

specific functional limitations as the result of any mental impairment.  As such, the ALJ had no basis to find that Plaintiff's purported memory loss, or lack of attention and focus, is a severe impairment under the Act.

Plaintiff contends that the ALJ did not adequately consider her obesity.  Plaintiff's argument is contrary to the ALJ's decision.  First, the ALJ indeed considered Plaintiff's obesity, and in fact, the ALJ listed obesity as a severe impairment.  AR. 12-13.  The ALJ then correctly explained that obesity does not have any specific medical Listing.  Rather, the effects of obesity must be considered in combination with other impairments.  However, in doing so, the ALJ must not make any assumptions about those combined effects.  Indeed, obesity may or may not increase the severity or functional limitations of other impairment.  *See* Security Ruling 02-1p; *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(finding that generalized assertion that a claimant's weight limited her functional abilities is not sufficient, especially when the ALJ relied on medical evidence as a basis for his findings); *Santini v. Comm'r of Soc. Sec.*, No. 08-5348, 2009 U.S. Dist. LEXIS 96649, at *12-13 (D.N.J. Oct. 14, 2009)(finding that a plaintiff must proffer medical evidence to support his assertion that obesity impaired his ability to work); *Orta v. Comm'r of Soc. Sec.*, No. 15-6061, 2016 U.S. Dist. LEXIS 147988, at * (D.N.J. Oct. 25, 2016)(finding that plaintiff must provide specific medical evidence demonstrating that obesity somehow affected his work-related limitations).  Therefore, to the extent that Plaintiff maintains that her obesity severely affected her functional abilities, she must provide sufficient evidence to support such an assertion.  And, on this point, Plaintiff comes up empty handed.  Other than to criticize the ALJ's decision and insist that the ALJ should have considered Plaintiff's obesity in connection with her other impairments, Plaintiff has failed to cite to specific medical records in which a physician assessed Plaintiff's functional limitations in light of her obesity.  Without any

medical evidence, the ALJ's determination that Plaintiff's obesity did not adversely affect Plaintiff's RFC was not improper.

Next, Plaintiff argues that the ALJ erred when she determined that Plaintiff had the RFC to perform light work. For support, Plaintiff points to Dr. Roque's report which opined that Plaintiff had difficulty "getting up" from the examination table, and that she can only stand for twenty minutes, sitting for thirty minutes or walking for one block. Plaintiff's argument is contrary to the evidence in the record. First, Dr. Roque found Plaintiff's gait normal, her muscle strength was full (5/5) in her arms and legs, her grip strength was full, and while the doctor stated that Plaintiff had to turn on her sides to get up from the examination table, Plaintiff had no difficulty sitting or getting on the examination table. AR. 218. Indeed, although Dr. Roque found that Plaintiff "has physical functional limitations in performing activities that requires prolong[ed] standing/walking/sitting," Plaintiff is "capable in performing activities of daily living, some instrumental activities of daily living and ambulatory type of work at her own pace," and that Plaintiff is "able to sit, with some limitations for prolong[ed] standing and walking; she [is] able to carry, handle objects, hear, speak, read, write, and travel." AR. 220. When the state-agency doctor, Dr. Shastry, evaluated this report, he opined that the limitations that Dr. Roque described are consistent with a range of light work. AR. 76. Dr. Golish, a second state-agency doctor, confirmed this finding, and opined that Plaintiff may indeed perform light work. AR. 85. As such, there is substantial evidence to support the ALJ's opinion that Dr. Roque's diagnosis was consistent with the ALJ's RFC determination.[4] AR. 14.

---

[4] I note that Plaintiff claims that Dr. Roque found that Plaintiff can only stand for twenty minutes, sit for thirty minutes or walk for one block. However, Dr. Roque made no such findings. Rather, those limitations appear solely in the part of Dr. Roque's report wherein the doctor merely described Plaintiff's own-self reports of symptoms and limitations. Accordingly, it is not accurate that Dr. Roque made those limitations as a part of her medical opinion.

Plaintiff further challenges the ALJ's treatment of her subjective complaints. A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *Hartranft v. Patel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). If the ALJ determines that a medical impairment could reasonably cause the alleged symptoms, she must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which it affects the Plaintiff's ability to work. SSR 96–7p, 1996 SSR LEXIS 4 (S.S.A. July 2) at *2; *Garibay v. Comm'r Of Soc. Sec.*, 336 Fed. Appx. 152, 157 (3d Cir. 2009). "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96–7p, at *2; *Garibay*, 336 Fed. Appx. at 157. In complying with this standard, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, at *3–4. In determining whether a claimant's statements are supported by the overall record, the ALJ will consider evidence from physicians, and other factors such as the claimant's daily activities; descriptions of symptoms; medications; and other treatment. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p (S.S.A.). Credibility determinations are entitled to substantial deference on appeal. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness' demeanor").

Here, Plaintiff testified at the hearing that she cannot sit for more than 20 to 30 minutes due to the pain in her back, legs and hip areas. Plaintiff stated that she is only able to stand for

about a half hour and is able to walk for approximately ten minutes, and that she can lift and carry five or ten pounds. According to Plaintiff, she also has debilitating high blood pressure that causes her chest to feel tight, and that she would have a hard time breathing. Plaintiff testified that while she can prepare light meals on certain days, "on a bad day" she cannot do any activities. Plaintiff claims that she was laid off work because she was simply too sick. Although Plaintiff paints a grim picture for herself in terms of her functional limitations, the ALJ determined that the objective medical record did not credibly support Plaintiff's own assertion of disability. I, too, so find. None of the medical evidence submitted by Plaintiff support the types of debilitating limitations to which Plaintiff testified. For example, Dr. Passi repeatedly found that Plaintiff's peripheral pulsations were normal, and Plaintiff had no evidence of edema or focal deficit. Dr. Roque found that Plaintiff's gait was normal and did not require an assistive device to walk. More importantly, Dr. Roque opined that Plaintiff's sensory response was full in her left leg, deep tendon reflexes in her arms and legs were 2+, and that her muscle strength was full throughout. AR. 219. Indeed, state-agency doctors found Plaintiff capable of performing a range of light work, which opinion was consistent with Plaintiff's own treating physicians. Indeed, as the ALJ pointed out, Plaintiff reported that she engaged in daily activities, such as caring for, and socializing with, her family, preparing meals, and occasional cleaning. With regard to Plaintiff's work, it is important to note that Plaintiff left her most recent job because she was laid off, not because she was unable to perform the functions of a research assistant or an administrative clerk. Therefore, I find that the ALJ did not err when she discounted Plaintiff's subjective complaints of pain and physical limitations.

Finally, Plaintiff argues that the jobs comprising her past relevant work, which the ALJ found Plaintiff capable of performing, were incompatible with the constraints of simple, routine

tasks, or with sedentary work.  But, nowhere in the record is there any evidence supporting the claim, or even suggesting that, Plaintiff can only perform sedentary work.  Rather, for all the foregoing reasons that I have just delineated, the ALJ's finding that Plaintiff has the RFC to perform light work was supported by substantial evidence.

Accordingly, the ALJ's decision is **AFFIRMED** and Plaintiff's appeal is denied.


Dated:  December 20, 2018                                    /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            United States District Judge